ELECTRONICALLY FILED
Jefferson County Circuit Court
Flora Cook-Bishop, Circuit Clerk
2024-Mar-14 16:38:48
35CV-24-199
C11WD02 : 24 Pages

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
## CIVIL DIVISION

**REPUNZA BROWN, as Special Administrator**
**of the Estate of DONALD BULTER, deceased, and**
**on behalf of the wrongful death beneficiaries of DONALD**
**BUTLER**                                                    **PLAINTIFF**


**vs.**                        **CASE NO.** _____


**DOLLARWAY ROAD OPERATING LLC d/b/a The**
**Blossoms at White Hall Rehab & Nursing Center**             **DEFENDANTS**


## COMPLAINT

COMES NOW, the Plaintiff, **REPUNZA BROWN**, as Special Administrator of the

Estate of **DONALD BUTLER**, deceased, on behalf of the wrongful death beneficiaries of

**DONALD BUTLER**, and for her cause of action against Defendant **DOLLARWAY ROAD**

**OPERATING LLC d/b/a The Blossoms at White Hall Rehab & Nursing Center** states:

### JURISDICATION, PARTIES and BENEFICIARIES

1.  **REPUNZA BROWN** (hereinafter "**REPUNZA**"), the daughter of **DONALD BUTLER**,

is the Special Administrator of the Estate of **DONALD BULTER**, which estate was opened in

**JEFFERSON** county for the express purpose of investigating and pursuing survival and wrongful

death causes of action stated herein. See *Letters of Administration*, attached hereto as *Exhibit A*.

**REPUNZA BROWN** brings these claims on behalf of the Estate of **DONALD BUTLER** and his

wrongful death beneficiaries claiming damages arising out of **DONALD BUTLER's** care and

treatment that occurred at **The Blossoms at White Hall Rehab & Nursing Center**. **REPUNZA**

is a resident of Winterville, Georgia.

2. **DONALD** was admitted on or about December 6, 2021 as a resident of **The Blossoms at White Hall Rehab & Nursing Center**, 9209 Dollarway Road, White Hall, Arkansas 71602 (**"THE BLOSSOMS"**). **DONALD** remained a resident of **THE BLOSSOMS** until January 7, 2022. **DONALD** passed away on January 8, 2022.

3. Whenever the term "The Blossoms Defendants" is utilized within this suit, such term collectively refers to, and includes **DOLLARWAY ROAD OPERATING LLC d/b/a The Blossoms at White Hall Rehab & Nursing Center**.

4. Whenever the term "Defendants" is utilized within this suit, such term collectively refers to, and includes, all named Defendants in this lawsuit.

5. Jurisdiction and venue are proper in this Court as the care and treatment giving rise to this Complaint occurred in **JEFFERSON** County, Arkansas. **REPUNZA** brings survival and wrongful death claims on behalf of **DONALD's** Estate pursuant to the Arkansas Survival Actions Statute Ark. Code Ann. § 16-62-101, the Arkansas Wrongful Death Act, Ark. Code Ann. § 16-62-102, the Arkansas Medical Malpractice Act, Ark Code Ann §. 16-114-201, et seq., and all other applicable law.

## FACTUAL ALLEGATIONS

6. **DONALD** was admitted on December 6, 2021, as a resident of **The Blossoms at White Hall Rehab & Nursing Center**, 9209 Dollarway Road, White Hall, Arkansas 71602 (**"THE BLOSSOMS"**). He remained a resident of **THE BLOSSOMS** until January 7, 2022. **DONALD** died on January 8, 2022.

7. **DONALD** was admitted with essential hypertension, cerebral infarction, heart failure, anxiety disorder, presence of cardiac pacemaker, post-traumatic stress disorder, and unspecified

dementia along with a wound and PEG tube. Defendants were aware of **DONALD's** medical conditions and represented that they could care for his needs.

8. The Blossoms Defendants, through advertising, marketing campaigns, promotional materials, information sheets, and documents filed with the Office of Long Term Care, held out themselves and the Facility as being able to provide medical, skilled nursing, rehabilitation, therapy and custodial care services to the elderly and frail individuals, including **DONALD.**

9. The Blossoms Defendants further assumed responsibility to provide **DONALD** with ordinary custodial and hygiene services.

10. The Blossoms Defendants exercised complete and total control over the healthcare of all residents of **THE BLOSSOMS**, including **DONALD.**

11. During his residence at **THE BLOSSOMS**, Mr. Butler suffered ongoing infection and he developed a deterioration of the wound to his sacrum, bilateral heels and feet. Mr. Butler also developed acute respiratory failure with hypoxia and sepsis. During his residence at **THE BLOSSOMS, DONALD** experienced malnutrition and lost more than 10% of his body weight in one month.

12. On December 20, 2021, DONALD developed a wound to the left upper sternum. He also was placed on an antifungal to treat the fungal infection that was present in his wound, which he received due to improper incontinent care.

13. On December 24, 2021, DONALD was hospitalized and suffered trauma to his PEG tube site and abdomen and was found to have ongoing malnutrition and dehydration.

14. The Blossoms Defendants operating entities, personally controlled, or had the right to control, the operation, financial, and health care services provided at **THE BLOSSOMS**.

15. The control exercised over the facility by **THE BLOSSOMS** Defendants included, inter alia: cash management; cost control; setting staffing levels; budgeting; marketing; maintaining and increasing census; supervision of the facility administrator and director of nursing; supervision and oversight of the staff; development and implementation of nursing staff in-services; development and implementation of all pertinent policy and procedures; monitoring customer satisfaction; performing mock surveys; risk management; corporate and regulatory compliance; quality of care assessment; licensure and certification; controlling accounts payable and receivable; development and implementation of reimbursement strategies; retaining contract management, physician, therapy and dietary services; dictating census and payor source quotas for admissions to the facility; and employing the facility-level, regional and corporate staff who together operated **THE BLOSSOMS**.

16. Upon information and belief, The Blossoms Defendants, by and through their respective managers, board of directors and corporate officers, utilized survey results and various other reports, including quality indicators, to monitor the care being provided at their nursing homes, including **THE BLOSSOMS**.

17. Upon information and belief, **THE BLOSSOMS** Defendants exercised ultimate authority over all budgets and had final approval over the allocation of resources for staffing, supplies, and operations of their nursing homes including the Facility.

18. Upon information and belief, as a part of their duties and responsibilities, **THE BLOSSOMS** Defendants had an obligation to establish policies and procedures that addressed the needs of the residents of the facility, including **DONALD**, with respect to the recognition and/or treatment of medical conditions, such as those experienced by **DONALD**, so as to ensure that

timely and appropriate care was provided for such conditions whether within **THE BLOSSOMS**, or obtained from other medical providers.

19. Upon information and belief, The Blossoms Defendants, acting through their administrators, managers, board of directors and corporate officers, were responsible for supervising the standard of professional practice by the members of their staff at the Facility, including regarding the conduct at issue herein.

20. Defendants had an obligation to employ competent, qualified and trained staff so as to ensure that proper care, treatment and services were rendered to individuals having medical, nursing and/or custodial needs, such as those presented by **DONALD,** as set forth herein.

21. As a part of their duties and responsibilities, the Defendants had an obligation to maintain and manage the Facility with adequate staff and sufficient resources to ensure the timely recognition and appropriate treatment of the medical, nursing and/or custodial needs of the residents, such as **DONALD,** whether within **THE BLOSSOMS,** or obtained from other medical care providers.

22. Upon information and belief, The Blossoms Defendants made a conscious decision to operate and/or manage the Facility so as to maximize profits at the expense of the care required to be provided to their residents, including **DONALD.**

23. Upon information and belief, in their efforts to maximize profits, The Blossoms Defendants negligently, intentionally and/or recklessly mismanaged and/or reduced staffing levels below the level necessary to provide adequate care to the residents.

24. Upon information and belief, despite their knowledge of the likelihood of harm due to insufficient staffing levels, and despite complaints from staff members about insufficient staffing levels, the Defendants recklessly and/or negligently disregarded the consequences of their actions,

and/or negligently caused staffing levels at the facility to be set at a level such that the personnel on duty could not and did not meet the needs of **THE BLOSSOMS's** residents, including **DONALD**.

25. Upon information and belief, The Blossoms Defendants intentionally increased the number of sick, elderly and frail residents with greater health problems requiring more complex medical care.

26. The Blossoms Defendants knew, or should have known, that this increase in the acuity care levels of the resident population would substantially increase the need for staff, services, and supplies necessary for the new resident population.

27. The Blossoms Defendants knew, or should have known, that the acuity needs of the residents in their nursing homes increased and, therefore, the required resources also increased, including the need for additional nursing staff in order to meet the needs of the residents, including **DONALD**.

28. The Blossoms Defendants failed to provide the resources necessary, including sufficient staff, to meet the needs of the residents, including **DONALD**.

29. The Blossoms Defendants knowingly established staffing levels that created recklessly high resident to staff ratios, including high resident to nurse ratios and high resident to nurse aide ratios.

30. The Blossoms Defendants knowingly disregarded patient acuity levels while making staffing decisions, and also knowingly disregarded the minimum time required by the staff to perform essential day-to-day functions and treatments.

31. Upon information and belief, the acts and omissions of the Defendants were motivated by a desire to increase the profits of the nursing homes they own, including **THE BLOSSOMS**, by

knowingly, recklessly, and with disregard for the health and safety of the residents, reducing expenditures for needed staffing, training, supervision, and care to levels that would inevitably lead to severe injuries, such as those suffered by **DONALD.**

32. The actions of The Blossoms Defendants were designed to increase reimbursements by governmental programs, which, upon information and belief, are the primary source of income for **THE BLOSSOMS**.

33. The aforementioned acts directly caused injury to **DONALD** and were known, or should have been known, by The Blossoms Defendants.

34. The Blossoms Defendants knowingly sacrificed the quality of care received by all residents, including **DONALD**, by failing to manage, care, monitor, document, chart, prevent, diagnose and/or treat the injuries to and risks of danger suffered by **DONALD**, as described herein.

35. The Blossoms Defendants failed to discharge their obligations of care to **DONALD** with a conscious disregard for his rights and safety. At all times mentioned herein, The Blossoms Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by **DONALD**, as more fully set forth below. Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of the facility, including **DONALD**. The severity of the recurrent negligence inflicted upon **DONALD** while under the care of the facility accelerated the deterioration of his health and physical condition and resulted in the physical and emotional injuries described below:

     a) Deterioration and infection of Sacrum Wound;

     b) Deterioration and infection of wounds to the bilateral extremities including heels and feet;

     c) Acute Respiratory Failure with Hypoxia

*Butler - Plaintiff's Original Complaint*                                                         7

d) Renal Failure and Dehydration

e) Weight loss; and

f) Death

The above-identified injuries, as well as the conduct specified below, caused **DONALD** to suffer loss of personal dignity, pain and suffering, hospitalization, mental anguish, degradation, disability, and emotional distress, and caused his untimely death.

36. The aforementioned injuries were caused solely and exclusively by reason of the negligence, carelessness and recklessness of The Blossoms Defendants, their agents, servants, contractors, subcontractors, staff and/or employees.

37. The severity of the negligence inflicted upon **DONALD** by the Defendants' mismanagement, improper/under-budgeting, understaffing of the Facility and lack of training or supervision of **THE BLOSSOMS**'s employees, failure to provide adequate and appropriate health care; engaging in incomplete, inconsistent and likely fraudulent documentation; failure to develop an appropriate care plan; failure to ensure the highest level of physical, mental and psychosocial functioning was attained, causing **DONALD** to endure the injuries set forth above.

38. As a result of the negligence, carelessness and recklessness of The Blossoms Defendants herein described, **DONALD** suffered serious injuries as described herein, to, in and about his body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or diseases he had, and/or the accelerated deterioration of his health, physical and mental condition, and a loss of the ordinary pleasures of life, a loss of dignity, humiliation, unnecessary pain and suffering, hospitalization, mental anguish, degradation, disability, disfigurement, emotional distress, and untimely death.

## CAUSES OF ACTION AGAINST THE BLOSSOMS

39.  Plaintiff incorporates herein by reference the preceding paragraphs as though the same were more fully set forth at length herein.

40.  Based upon the foregoing allegations regarding The Blossoms Defendants' control and management of **THE BLOSSOMS** and the injuries suffered by **DONALD** during The Blossoms Defendants' ownership and control of the Facility, Plaintiff pleads the following causes of action:

> **I.    Cause of action of ordinary negligence and failures in ordinary duties of care imposed on a long-term care facility.**

41.  Based upon the allegations of control, management and involvement in the operation of **THE BLOSSOMS,** outlined above, each of The Blossoms Defendants, as well as their agents and employees, undertook duties of care to the residents at **THE BLOSSOMS**, including **DONALD**.

42.  It was foreseeable to each of The Blossoms Defendants that harm would result to **DONALD** if The Blossoms Defendants did not provide at least the care equivalent that is required of a nursing home caring for a resident in a similar state of health, mental status and abilities.

43.  Among the duties The Blossoms Defendants owed to **DONALD** as the owners, operators, licensees, managers and consultants, agents and employees of **THE BLOSSOMS**, The Blossoms Defendants were obligated to use ordinary care to determine the mental and physical condition of **DONALD**, to furnish **DONALD** the care and attention reasonably required by his mental and physical condition, to provide his adequate supervision to prevent injuries, and to follow the orders and directions of **DONALD's** attending physician and care plan regarding his activities of daily living and ordinary caretaking.

44.     While **DONALD** resided at **THE BLOSSOMS,** The Blossoms Defendants failed to ensure the development and implementation of policies and procedures to ensure a safe and hygienic environment.

45.     While **DONALD** resided at **THE BLOSSOMS,** The Blossoms Defendants failed to provide adequate oversight and supervision to prevent abuse and neglect.

46.     While **DONALD** resided at **THE BLOSSOMS,** The Blossoms Defendants failed to provide adequate oversight and supervision to ensure a safe environment.

47.     While **DONALD** resided at **THE BLOSSOMS,** The Blossoms Defendants failed to provide his with a sanitary environment.

48.     While **DONALD** resided at **THE BLOSSOMS,** The Blossoms Defendants failed to ensure his quality of care and quality of life.

49.     While **DONALD** resided at **THE BLOSSOMS,** The Blossoms Defendants failed to ensure he did not develop respiratory failure.

50.     While **DONALD** resided at **THE BLOSSOMS,** The Blossoms Defendants failed to ensure he did not develop sepsis.

51.     While **DONALD** resided at **THE BLOSSOMS,** The Blossoms Defendants failed to ensure he did not develop worsening pressure wounds.

52.     The Blossoms Defendants were negligent in the hiring, training, retention and supervision of non-medical, caretaking staff and the professional nursing staff at **THE BLOSSOMS**.

53.     The Blossoms Defendants understood that staffing at minimum levels did not necessarily meet the needs required by residents at **THE BLOSSOMS**, such as **DONALD**. The Blossoms Defendants also were aware that the biggest expenditure in their operating budget was staffing the facility. The Blossoms Defendants sought and kept staffing at or below minimum levels, knowing

that this staffing strategy would result in injury to residents at **THE BLOSSOMS**, including **DONALD.**

54.   The Protection of Long-Term Care Facility Residents Act, Arkansas Code § 20-10- 1201 et seq., mandates the development, establishment, and enforcement of basic standards for the health, care, and treatment of persons in long-term care facilities; and mandates that the maintenance and operation of long-term care facilities will ensure safe, adequate, and appropriate care, treatment, and health of residents, such as **DONALD.**

55.   The Blossoms Defendants infringed upon, and **DONALD** was deprived of, rights mandated by Arkansas Code § 20-10-1201 et seq. including, but not limited to, the following:

a) The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for **DONALD** with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

1. The right to receive adequate and appropriate custodial service, defined as care for **DONALD** which entailed observation of diet and sleeping habits and maintenance of a watchfulness over his general health, safety, and well-being; and

2. The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and **DONALD** or his designee or legal representative, which included a comprehensive assessment of the needs of **DONALD**, a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

b) The right to regular, consultative, and emergency services of physicians;

c) The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

d) The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the

needs and conditions of **DONALD**, and not directly furnished by the licensee(s);

e) The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f) The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g) The right to be free from mental and physical abuse;

h) The right of **DONALD** to have privacy of his body in treatment and in caring for his personal needs;

i) The right to the obligation of the facility to keep full records of the admissions and discharges of **DONALD**, and his medical and general health status, including:

    1. medical records;

    2. personal and social history;

    3. individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals; and

    4. making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed.

56. The above infringement and deprivation of the rights of **DONALD** were the result of The Blossoms Defendants failing to do that which a reasonably careful person would do under similar circumstances.

57. The aforementioned statutory violations constitute evidence of The Blossoms Defendants' negligence.

58.   The foregoing breaches of duties of ordinary care owed by The Blossoms Defendants, in a natural and continuous sequence, were each a proximate cause of the injuries incurred by **DONALD** at **THE BLOSSOMS,** and without which, the injuries and death alleged herein would not have occurred.

59.   A reasonable nursing home, operating under the same or similar circumstances as **THE BLOSSOMS** would not have breached the above-described duties of care. It was reasonably foreseeable that the injuries described herein, would result from the breaches of duties of care set out above.

60.   Plaintiff alleges that The Blossoms Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct and the manner in which The Blossoms was operated would naturally and probably result in injury to residents, such as **DONALD,** and yet The Blossoms Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

61.   Due to the injuries proximately caused by The Blossoms Defendants' ordinary negligence, Plaintiff asserts a claim for judgment for compensatory damages against The Blossoms Defendants, including, but not limited to, compensation for loss of life, conscious pain and suffering, medical and other related expenses, mental anguish, disability, degradation, humiliation, loss of personal dignity, humiliation, emotional distress, disfigurement, and other results of **DONALD**'s injuries recoverable under Arkansas law in an amount to be determined by the jury and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

62.   As a direct and proximate cause of The Blossoms Defendants' ordinary negligence, the wrongful death beneficiaries of **DONALD BUTLER** suffered mental anguish and will continue to suffer mental anguish into the future.

63.   In addition to compensatory damages for the actual losses that **DONALD** sustained, Plaintiff also is entitled to recover punitive damages for the grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, of The Blossoms Defendants in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

**II.      Cause of Action of medical malpractice negligence and failures in professional standards of care imposed on a long-term care facility.**

64.  Wrongful conduct by the The Blossoms Defendants, their agents and employees, also included acts or omissions constituting professional medical or nursing negligence, pursuant to the Actions for Medical Injury Act, Arkansas Code § 16-114-201 et seq., to the extent the above-described injuries incurred by **DONALD** included "medical injuries," as defined by that Act.

65.  Each of the The Blossoms Defendants was either a "medical care provider" or was vicariously liable for the conduct of a "medical care provider," as defined by the Act, Arkansas Code § 16-114-201(2), in relevant part, as a nurse, nursing home, or an officer, employee or agent thereof acting in the course and scope of employment in the providing of such medical care or medical services.

66.  In diagnosing the condition of and treating a patient through the provision of services requiring the judgment, skills and/or training of licensed medical or nursing personnel, a nursing home has a professional duty to possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of the same profession in good standing,

engaged in the same skilled nursing home practice in the locality in which the nursing home practices or in a similar locality.

67.  The Blossoms Defendants failed to meet the applicable standards of care and violated their duty of care to **DONALD** through mistreatment, abuse and neglect. The medical negligence of Nursing Home Defendants includes, but is not limited to, the following acts and omissions:

a) Failure to ensure Nursing Consultants provided sufficient nursing and other staff that was properly qualified and trained;

b) Failure to adequately, timely and appropriately educate and inform the caregivers at the facility of the needs, level of assistance, and prescribed care and treatment for **DONALD**;

c) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

d) Failure to ensure that **DONALD** attained and maintained his highest level of physical, mental, and psychosocial well-being;

e) Failure to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical and psychosocial needs similar to those of **DONALD**;

f) Failure to monitor or increase the number of nursing personnel at the facility to ensure that **DONALD** received necessary supervision, timely and accurate care assessments, received proper treatment, and received timely custodial intervention due to a significant change in condition;

g) Failure to adequately screen, evaluate, and check references, test for competence and use ordinary care in selecting nursing personnel to work at the facility; and

h) Failure to terminate employees at the facility assigned to **DONALD** who were known to be careless, incompetent and unwilling to comply with standards governing care, treatment and services provided to residents like **DONALD**;

i) Failure to discharge his legal and lawful duties to protect the health and safety of residents, such as **DONALD**, that such duties were consistently complied with on an ongoing basis; and to ensure appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

j)  Failure to discharge his legal and lawful obligation to ensure compliance with the facility's resident care policies;

k)  Failure to adopt adequate guidelines, policies, and procedures of the facility for documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at the facility, regardless of whether such complaint derived from a resident of the facility, an employee of the facility or any interested person;

l)  Failure to document and maintain medical records on **DONALD** in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible and systematically organized with respect to diagnosis, treatment and assessment and establishment of appropriate care plans of care and treatment;

m)  Failure to properly in-service and orient employees to pertinent patient care needs to maintain the safety of residents; and

n)  Failure to ensure that services provided or arranged by the facility were provided by qualified persons in accordance with **DONALD**'s written plan of care and failure to ensure that the physician's plan of care was implemented.

68.  During The Blossoms Defendants' ownership and control of The Blossoms, The Blossoms Defendants failed to timely assess, care plan, document and follow orders to maintain **DONALD**'s skin integrity and to prevent the development of pressure sores.

69.  During The Blossoms Defendants' ownership and control of The Blossoms, The Blossoms Defendants failed to timely assess, care plan, document and follow orders to prevent the development of respiratory failure and sepsis.

70.  During The Blossoms Defendants' ownership and control of The Blossoms, The Blossoms Defendants failed to timely assess, care plan, document and prevent, treat or manage **DONALD**'s pain.

71.  While **DONALD** resided at The Blossoms, The Blossoms Defendants failed to provide adequate oversight and supervision to ensure that **DONALD**'s skin issues were timely identified and assessed and did not worsen.

72. While **DONALD** resided at The Blossoms, The Blossoms Defendants failed to sufficiently document the skin care treatments provided to **DONALD** during his admission.

73. During The Blossoms Defendants' ownership and control of The Blossoms, The Blossoms Defendants failed to timely assess, care plan, document and prevent, treat or manage **DONALD's** infections.

74. During The Blossoms Defendants' ownership and control of **THE BLOSSOMS**, The Blossoms Defendants failed to timely assess, care plan, document and prevent, treat and manage **DONALD's** malnutrition.

75. During The Blossoms Defendants' ownership and control of **THE BLOSSOMS**, the The Blossoms Defendants failed to timely assess, care plan, document and notify **DONALD's** physician and family about substantial changes in his condition and mental status.

76. During The Blossoms Defendants' ownership and control of **THE BLOSSOMS**, The Blossoms Defendants maintained inadequate nursing records and were incomplete in documenting **DONALD's** nursing care.

77. The foregoing breaches of duties of profession medical and nursing standards of care owed by The Blossoms Defendants, in a natural and continuous sequence, were each a proximate cause of the injuries incurred by **DONALD** at The Blossoms, and without which breaches of care, his injuries and death would not have occurred.

78. A nursing home, in good standing and engaged in the practice of skilled long-term care in the same or a similar locality, would not have breached the above-described duties of professional medical or nursing care. It was reasonably foreseeable that the injuries described herein would result from the breaches of duties of professional care set out above.

79.  Plaintiff alleges that The Blossoms Defendants knew, or ought to have known, in the light of the surrounding circumstances, that their conduct and the manner in which the facility was operated would naturally and probably result in injury to residents, such as **DONALD**. Yet, **THE BLOSSOMS** Defendants continued such conduct with actual malice or in reckless disregard of the consequences from which malice may be inferred.

80.  Due to the injuries proximately caused by the above listed professional medical and nursing negligence of The Blossoms Defendants, Plaintiff asserts a claim for judgment for compensatory damages against The Blossoms Defendants, including, but not limited to, compensation for loss of life, conscious pain and suffering, medical and other related expenses, mental anguish, disability, degradation, humiliation, loss of personal dignity, humiliation, emotional distress, disfigurement, and other results of **DONALD**'s injuries recoverable under Arkansas law in an amount to be determined by the jury and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

81.  As a direct and proximate cause of The Blossoms Defendants' medical negligence, the wrongful death beneficiaries of **DONALD** suffered mental anguish, and will continue to suffer mental anguish into the future.

82.  In addition to compensatory damages for the actual losses that **DONALD** sustained, Plaintiff also is entitled to recover punitive damages for the grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct of The Blossoms Defendants in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### III.    Medical Malpractice Negligence and Violations of the Duties of Cre Imposed on a Licensee of a Long-Term Care Facility

83. Among the The Blossoms Defendants, **DOLLARWAY ROAD OPERATING LLC,** was the licensee of The Blossoms and had statutorily-mandated duties to provide **DONALD** with basic, nursing home resident's rights as set forth in the Protection of Long-Term Care Facility Residents Act, Arkansas Code § 20-10-1201 et seq.

84. The Protection of Long-Term Care Facility Residents Act mandates the development, establishment, and enforcement of basic standards for the health, care, and treatment of persons in long-term care facilities; and mandates that the maintenance and operation of long- term care facilities will ensure safe, adequate, and appropriate care, treatment, and health of residents, such as **DONALD.**

85. The Protection of Long-Term Care Facility Residents Act mandates that every licensed facility shall comply with all applicable standards and rules of the Office of Long-Term Care of the Arkansas Department of Human Services.

86. The statutory duty imposed upon the licensee of **THE BLOSSOMS** to prevent deprivation or infringement of the resident's rights of **DONALD** was non-delegable. Thus, among the The Blossoms Defendants, the licensee is directly liable to Plaintiff for any deprivation and infringement of **DONALD's** resident's rights occurring as a result of their own action or inaction, and as a result of the action or inaction of any other person or entity, including employees, agents, consultants, independent contractors and affiliated entities, whether in-house or outside entities, individuals, agencies or pools, as well as any deprivation and infringement of **DONALD's** resident's rights caused by the The Blossoms Defendants' policies, procedures, whether written or unwritten, and common practices.

87. Any person or entity acting as an employee or agent **DOLLARWAY ROAD OPERATING LLC** assumed and undertook to perform the licensee's non-delegable and

statutorily-mandated duty to provide and protect **DONALD**'s nursing home resident's rights as set forth in Arkansas Code § 20-10-1201 et seq. in the operation and management of **THE BLOSSOMS**.

88. Notwithstanding the responsibility of the licensee to protect and provide for these statutorily-mandated nursing home resident's rights, The Blossoms Defendants infringed upon, and **DONALD** was deprived of, rights mandated by Arkansas Code § 20 10-1201 et seq. including, but not limited to, the following:

    a) The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for **DONALD** with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

        1. The right to receive adequate and appropriate custodial service, defined as care for **DONALD** which entailed observation of diet and sleeping habits and maintenance of a watchfulness over his general health, safety, and well-being; and

        2. The right to receive adequate and appropriate residential care plans, defined as a written plan developed, maintained, and reviewed not less than quarterly by a registered nurse, with participation from other facility staff and **DONALD** or his designee or legal representative, which included a comprehensive assessment of the needs of **DONALD**, a listing of services provided within or outside the facility to meet those needs, and an explanation of service goals;

    b) The right to regular, consultative, and emergency services of physicians;

    c) The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

    d) The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of **DONALD**, and not directly furnished by the licensee(s);

    e) The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended

*Butler - Plaintiff's Original Complaint*                                                    20

by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

f)  The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

g)  The right to be free from mental and physical abuse;

h)  The right of **DONALD** to have privacy of his body in treatment and in caring for his personal needs;

i)  The right to the obligation of the facility to keep full records of the admissions and discharges of **DONALD**, and his medical and general health status, including:

    1.  medical records;

    2.  personal and social history;

    3.  individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals; and

    4.  making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed.

j)  The right to be treated courteously, fairly, and with the fullest measure of dignity.

89.  The above infringement and deprivation of the rights of **DONALD** was the result of the licensee's failure to do that which a reasonably careful person would do under similar circumstances.

90.  As a result of the aforementioned violations, Arkansas Code § 20-10-1209(a)(1), entitles Plaintiff to bring a medical injury action under § 16-114-201 et seq., against any licensee responsible for the deprivation or infringement or **DONALD's** rights.

91.  Pursuant to Arkansas Code § 20-10-1209(a)(4), Plaintiff is entitled to recover actual damages against the licensee of **THE BLOSSOMS**. Accordingly, Plaintiff asserts a claim for

judgment for actual damages against the licensee of **DOLLARWAY ROAD OPERATING LLC** for the infringement of **DONALD's** residents' rights, in an amount to be determined by the jury and exceeding that required for jurisdiction by the Court and in excess of the amount required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which Plaintiff is entitled by law.

92.   In addition, the aforementioned statutory violations constitute evidence of The Blossoms Defendants' professional medical and nursing negligence.

93.   Due to the injuries proximately caused by the above listed professional medical and nursing negligence, Plaintiff is entitled to be compensated for **DONALD's** loss of life, conscious pain and suffering, medical and other related expenses, mental anguish, disfigurement, disability, degradation, loss of personal dignity, and other results of **DONALD's** injuries. The amount of compensation, to be determined by a jury, should exceed the amount required for jurisdiction by the Court and the amount required for federal court jurisdiction in diversity of citizenship cases, plus all other relief to which the Plaintiff is determined to be entitled by law.

94.   As a direct and proximate cause of The Blossoms Defendants' ordinary negligence, the wrongful death beneficiaries of **DONALD** suffered mental anguish, and will continue to suffer metal anguish into the future.

95.   In addition to compensatory damages for the actual losses that **DONALD** sustained, Plaintiff also is entitled to recover punitive damages for the grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, of The Blossoms Defendants in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## **DEMAND FOR JURY TRIAL**

96. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, **REPUNZA BROWN, as Special Administrator of the Estate of DONALD BUTLER, deceased, on behalf of the wrongful death beneficiaries of DONALD BUTLER**, prays for judgment against the named Defendants as follows:

1.  For damages in an amount adequate to compensate Plaintiff for the injuries and damages sustained;

2.  For all general and special damages caused by the alleged conduct of the Defendants;

3.  For punitive damages sufficient to punish the Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to and to deter the Defendants and others from repeating such atrocities; and

4.  For all other damages and relief to which Plaintiff is entitled.

Respectfully submitted,

**REPUNZA BROWN, as Special Administrator of the Estate of DONALD BUTLER, deceased, on behalf of the wrongful death beneficiaries of DONALD BUTLER, Plaintiff**

BY: /s/ Jonathan D. Jones
Jonathan D. Jones ABA # 2002004
Attorney at Law, P.A.
835 Central Ave. Suite 508
Hot Springs, AR 71901
(P) 501/321-2333
(F) 501/359-3500
JonathanDJones@gmail.com